# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **GLEN ANTYONE WILLIAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:11-CV-3671-VEH** |
| | ) |
| **WERNER ENTERPRISES, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Plaintiff Glen Antyone Williams ("Mr. Williams") initiated this personal injury lawsuit against Defendants Werner Enterprises ("Werner") and Oumer S. Oumer ("Mr. Oumer") in the Circuit Court of Cleburne County on September 9, 2011. (Doc. 1-1 at 1).[1] Defendants removed the action to this court on October 19, 2011, on the basis of diversity jurisdiction. (Doc. 1 ¶ 3).

In this case, Mr. Williams maintains that he was injured due to a motor vehicle collision caused by Mr. Oumer, one of Werner's drivers, on January 21, 2010. (Doc. 1-1 ¶ 4). Mr. Williams is asserting claims against Mr. Oumer and Werner for

---

[1] All page references to Doc. 1-1 correspond with the court's CM/ECF numbering system.

negligence and wantonness under Alabama law.  (Doc. 1-1 ¶¶ 6-7).

On April 19, 2012, the court granted intervenor status to Builders Transport, Inc. ("Builders"), and its insurer, Cherokee Insurance Company ("Cherokee").  (Doc. 11).  As Builders and Cherokee maintain, "when Mr. Williams was injured, he was 'allegedly working within the line and scope of his employment with Builders' and . . . they 'have a subrogation lien on any funds that may be recovered by [Mr.] Williams in his 'third-party' action from the defendant via settlement or judgment.'" (Doc. 11 at 1-2 (quoting Doc. 10 ¶¶ 1, 6)).

As a part of the pretrial process, on August 29, 2013, the court entered a margin order which permitted Defendants to file any dispositive motions on or before September 30, 2013.  (*See* CM/ECF entry dated Aug. 29, 2013 ("Finally, the deadline for filing any Dispositive Motion is September 30, 2013.")).  Pending before the court is Defendants' Motion for Partial Summary Judgment (Doc. 34) (the "Partial Motion") filed on September 30, 2013.   The parties have supported and opposed the Partial Motion; however, Defendants elected not to file a reply brief. (Docs. 35-38).[2]

Accordingly, the Partial Motion is now under submission.  For the reasons explained below, the Partial Motion is **DENIED**.

---

[2]   All page references to Doc. 35 and Doc. 37 correspond with the court's CM/ECF numbering system.

## II.    FACTUAL BACKGROUND[3]

This lawsuit arises from a motor vehicle accident between two tractor trailers which took place on January 21, 2010, in Cleburne County, Alabama.  More specifically, the collision involving Mr. Oumer and Mr. Williams occurred on I-20 westbound.  At the time of the wreck, Mr. Oumer was employed by Werner.

Approximately two to two and a half "truck lengths" prior to the point of impact, I-20 crests a hill.  Further, Mr. Oumer has expressly acknowledged his awareness that, after I-20 crosses into Alabama, there is a hill – right before the site of the collision – and the Alabama welcome center and rest stop is located at the foot of the hill.

Before cresting the above-mentioned hill on January 21, 2010, Mr. Williams

---

[3]  Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.  Finally, these facts are taken from Defendants' narrative summary of undisputed facts and Mr. Williams's response to those facts as well as part of his additional undisputed and disputed facts, the substance of which Defendants have not contested under the requirements of Appendix II to the court's uniform initial order (Doc. 3) entered on October 19, 2011.  (*See* Doc.  35 ¶¶ 1-10 ("**STATEMENT OF UNDISPUTED RELEVANT MATERIAL FACTS**"); Doc. 37 at 2 ("Mr. Williams does not dispute the facts stated by Defendants."); Doc. 37 at 2-4 ¶¶ 1-14 ("**PLAINTIFF'S ADDITIONAL UNDISPUTED FACTS**"); Doc. 37 at 4-12 ¶¶ 1-22 ("**PLAINTIFF'S ADDITIONAL DISPUTED FACTS**")).

was driving a tractor trailer in the right lane of traffic.  As Mr. Williams crested the

hill, he saw Mr. Oumer's tractor trailer on the right shoulder of the road.

Mr. Oumer has acknowledged that the Werner's Driver's Handbook indicates

at least three times that a driver should "Never stop or park on the roadway or the

shoulder of the road unless you have a breakdown or you are blocked or prohibited

from moving forward."  Mr. Oumer also has admitted that this same rule is stated in

the Federal Motor Carrier Safety Regulations book.  No evidence in the record shows

that Mr. Oumer's stopping on the shoulder on January 21, 2010, was due to an

accident or breakdown.

At or about the time that he spotted Mr. Oumer's vehicle on the shoulder, Mr.

Williams saw Mr. Oumer's tractor trailer begin to enter the roadway.  Mr. Williams

attempted to stop his tractor trailer to prevent a collision, but was unable to do so

before colliding with the rear Mr. Oumer's tractor trailer.

Mr. Oumer denies pulling from the shoulder of the interstate and maintains that

he was traveling in the right lane when he was struck in the rear by the tractor trailer

operated by Mr. Williams.  However, one nonparty witness testified "see[ing] the

Werner truck starting to move" and Mr. Oumer "trying to gain some speed."  This

same witness indicated that "the Werner's truck [then] move[d] abruptly from the

shoulder of the road into the right-hand lane, and [that] this was a very abrupt

4

maneuver to take it over.  And at that point, there [wa]s maybe a second or two where [he] s[aw] the flatbed [driven by Mr. Williams] hit the brakes."

Another nonparty witness testified during his deposition that Mr. Oumer pulled out "sharp enough to swing out and get pretty much everything [*i.e.*, the truck and trailer] out in the road."  This same witness did not recall seeing any flashers or turn signals from Mr. Oumer's vehicle.

## III.    STANDARD OF REVIEW

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## IV.   ANALYSIS

Defendants' Partial Motion seeks summary judgment on Mr. Williams's wantonness count only.  Defendants contend that Mr. Williams has not produced sufficient evidence which could support a jury returning a verdict for him on his claim for wantonness.  (Doc. 35 at 5 ("A comparison of the facts in the instant case to Alabama case law interpreting wantonness illustrates no reasonable jury could determine Mr. Oumer operated his vehicle wantonly.")).

The court agrees with Defendants that wantonness includes more than just a heightened level of awareness under Alabama law.  *See, e.g., Tolbert v. Tolbert*, 903 So. 2d 103, 114 (Ala. 2004) ("Wantonness is not merely a higher degree of culpability than negligence.") (internal quotation marks omitted).   As the Supreme Court of Alabama explained wantonness in *Scott v. Villegas*, 723 So. 2d 642 (Ala. 1998):

> In *Alfa Mutual Ins. Co. v. Roush*, 723 So. 2d 1250 (Ala.1998), this Court clarified the definition of "wantonness":
>
>> "'Wantonness' is statutorily defined as '[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.' Ala. Code 1975, § 6-11-20(b)(3). 'Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. *Bozeman v. Central*

6

> *Bank of the South*, 646 So. 2d 601 (Ala. 1994)."
>
> Wantonness requires more than a mere showing of some form of inadvertence on the part of the driver; it requires a showing of some degree of conscious culpability. *See Ex parte Anderson*, 682 So. 2d 467, 469 (Ala. 1996); *see, also, George v. Champion Ins. Co.*, 591 So. 2d 852 (Ala. 1991). "The actor's knowledge may be proved by showing circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence." *Hamme v. CSX Transp., Inc.*, 621 So. 2d 281, 283 (Ala. 1993).

*Scott*, 723 So. 2d at 642 (emphasis added). Where the court parts with Defendants is on the issue of whether Mr. Williams has adduced sufficient evidence such that his wantonness claim should be tried to a jury.

More specifically, Defendants maintain that, even if believed by a jury, Mr. Oumer's abruptly pulling his tractor trailer from the shoulder into the right-hand lane of I-20 without using his flashers or turn signals or building up a sufficient amount of speed as he entered the lane, after previously coming to a complete stop along the shoulder in proximity to a portion of I-20 with a known hillcrest and blocked visibility issue, Mr. Oumer's actions still do not rise to a level sufficient to support a claim of wantonness.

In pressing this position, Defendants rely heavily upon *Enochs v. Lessors, Inc.*, No. 3:11–CV–782–CSC, 2012 WL 3656479 (M.D. Ala. Aug. 24, 2012); *Ex parte Essary*, 992 So. 2d 5 (Ala. 2007); *George v. Champion Ins. Co.*, 591 So. 2d 852

(Ala.1991); *South Cent. Bell Tel. Co. v. Branum*, 568 So. 2d 795 (Ala. 1990); and *Mandella v. Pennington*, 73 So. 3d 1257 (Ala. Civ. App. 2011).  Having examined each one these cases, the court finds that none of them establishes that Mr. Williams's wantonness claim should be kept from the jury here.  The court discusses these authorities more specifically below.

Although the Supreme Court of Alabama does address an accident involving a tractor trailer and a hillcrest, *Enochs* is otherwise substantially different from this case factually.  More particularly, *Enochs* did not involve a set of facts from which a jury could reasonably conclude that the driver of the tractor trailer, who caused the accident, abruptly pulled his tractor trailer from the shoulder into the right-hand lane of an interstate without using his flashers or turn signals or building up a sufficient amount of speed as he entered the lane, after previously coming to a complete stop along the shoulder in proximity to a portion of the interstate with a familiar hillcrest and restricted visibility issue.  Instead, the driver in *Enochs* "was unfamiliar with the area" and "saw no other vehicles on the road [as] . . . he pulled across Alabama Highway 229 [and] blocked the northbound lane and part of the southbound lane." 2012 WL 3656479, at *3.

In *Ex parte Essary*, in a split decision (Cobb, C.J., dissenting; Woodall, J., concurring in the result), the Supreme Court of Alabama upheld the trial court's

decision to grant summary judgment in the defendant's favor on wantonness in a motor vehicle collision case involving evidence of a rolling stop at an intersection. *See id.*, 992 So. 2d at 13 ("Instead, Burrell's testimony shows that when Essary reached the intersection, he slowed and made a 'rolling stop.'"); *see also id.* ("We reverse the portion of the Court of Civil Appeals' opinion reversing the trial court's judgment on the wantonness claim and we render a judgment in favor of Essary on that claim.").

Once again, factually distinguishable, in *Essary*, there was no evidence from which a jury could reasonably conclude that the driver abruptly pulled his tractor trailer from the shoulder into the right-hand lane of an interstate without using his flashers or turn signals or building up a sufficient amount of speed as he entered the interstate's right-hand lane into a familiarly dangerous part of the interstate. Also, in applying Alabama's self-destructive behavior presumption to the situation in *Essary*, the court explained:

> The facts here presented do not establish any basis from which to conclude that Essary was not possessed of his normal faculties, such as from voluntary intoxication, rendering him indifferent to the risk of injury to himself when crossing the intersection if he collided with another vehicle. <u>Nor is the act as described by Burrell so inherently reckless that we might otherwise impute to Essary a depravity consistent with disregard of instincts of safety and self-preservation.</u> We therefore conclude that, as a matter of law, the plaintiffs failed to offer substantial evidence indicating that Essary was conscious that injury would likely

or probably result from his actions.

*Ex parte Essary*, 992 So. 2d at 12 (emphasis added).

Thus, *Essary* acknowledges that, separate from evidence that a driver lacks normal mental capacities, certain actions, taken while driving, may be so inherently dangerous that Alabama's self-destructive behavior presumption is inapplicable or overcome. *Essary* also expressly recognizes that "[t]he determination whether a defendant's acts constitute wanton conduct depends on the facts in each particular case." *Id.*, 992 So. 2d at 10 (citing *Ex parte Anderson*, 682 So. 2d 467, 470 (1996)).

*George* likewise is inapposite to the facts in this case. Specifically, as the Supreme Court of Alabama summarized the facts taken in the light most favorable to the plaintiff in *George*:

> The facts before the trial judge were that the plaintiff, Elizabeth Karen George, age 16, was the passenger in an automobile driven by her best friend, Shannon Plaiss, also 16. The two were going to a birthday party. Shannon was driving a white 1979 Ford Pinto automobile, proceeding south on Memorial Parkway in Huntsville. It was a full car. Shannon was driving, Scott White was sitting in the front passenger seat, Karen's sister Paula was sitting beside White. Karen and her sister Kelly George were in the rear seat. It was Sunday afternoon and a clear day. The occupants of the car were engaged in conversation. As the car approached the intersection of the Parkway and Golf Road, Shannon saw that the traffic light was green. She glanced back in conversation. When she looked forward, the traffic light was red. Scott cried out for her to stop. Shannon testified in her deposition that she tried to put her foot on the brake pedal, but missed and hit the clutch pedal. She ran the red light, and her automobile collided with a vehicle that was turning

left in front of her.

*George*, 591 So. 2d at 854.

The Supreme Court of Alabama ultimately upheld the partial summary judgment ruling favorable to the defendant insurer in *George*, concluding that "[w]hile the[se] facts [may] show  inadvertence [on the part of the driver] . . . , they do not measure up to wantonness, which requires some degree of conscious culpability." *Id.*  In sharp contrast, here, sufficient evidence of wantonness exists, including Mr. Oumer's admitted familiarity with the interstate's hillcrest as well as non-party eyewitness testimony from which a jury could reasonably conclude that Mr. Oumer entered the right-hand lane of the interstate from the shoulder in a reckless manner.

*Branum* is both procedurally and substantively distinct from the situation here. First, from a procedural standpoint, in reversing the trial court, the Supreme Court of Alabama reviewed the merits the plaintiff's wantonness claim based upon the evidence developed during trial, as opposed to an evaluation of it on a summary judgment record.  *See Branum*, 568 So. 2d at 795 ("On appeal, South Central Bell argues that the trial court erred in submitting the wantonness and negligence claims to the jury.").

Factually, the plaintiff in *Branum*, an injured pedestrian, based wantonness

11

simply on the driver's failure to watch where he was going and his "knowledge of the habits of pedestrians in the downtown area . . . ." *Id.* at 798.   Further, testimony adduced at trial confirmed that the driver's attention was diverted by another vehicle, that the plaintiff witnessed the driver's van "zigzag[ging] as if its driver was trying to avoid a collision with the car[,]" and that the driver "immediately applied the brakes but could not avoid hitting [the plaintiff]." *Id.*  Thus, based upon this caliber of evidence, the jury could not reasonably infer wantonness. *See Branum*, 568 So. 2d at 798 ("We hold that these facts did not constitute sufficient proof that Davis, on that occurrence, acted wantonly.").

Finally, *Madella* is also inapposite.  More specifically, the Alabama Court of Civil Appeals found that the "beat the traffic" facts from *Madella* fell within the scope of the Supreme Court of Alabama's controlling holding in *Essary*.

> Hence, for purposes of reviewing the summary judgment, we accept Beck's testimony that Pennington did not stop in the paved gap in the concrete median and that he appeared to be attempting to beat the oncoming traffic.  Nonetheless, we find that the trial court did not err in holding that, under the supreme court's decision in *Essary*, Pennington was entitled to a summary judgment with respect to the wantonness claim. In *Essary*, the facts, viewed in the light most favorable to the plaintiffs, indicated that the defendant made a "rolling stop" and then attempted to beat the oncoming traffic.  In the case now before us, the facts, viewed in the light most favorable to Robert and Sharon, indicate that Pennington made a complete stop at the stop sign located at the edge of Domino's parking lot and then tried to beat the oncoming traffic. It appears that, in the case now before us, Pennington had to cross a

> greater distance in order to beat the oncoming traffic than *Essary* did; however, as was the case in *Essary*, there is no evidence in the case now before us indicating that Pennington was intoxicated or otherwise impaired and there is no evidence indicating that he was conscious that harm would likely or probably result from his attempting to beat the oncoming traffic.  Therefore, we find no merit in Robert and Sharon's argument that the case now before us is distinguishable from *Essary*.

*Mandella*, 73 So. 3d at 1266.  Contrastingly, Mr. Williams's wantonness claim is not premised upon a so-called "beat the traffic" scenario.

In sum, the court finds that the material facts before it are significantly distinguishable from those in *Enochs*, *Essary*, *George*, *Branum*, *Mandella*, and the other authorities cited by Defendants.  Further, critically absent from Defendants' brief is any comparable authority (and this court is unaware of any) in which the Supreme Court of Alabama has ruled that a driver of a tractor trailer, who, despite having knowledge of an obstructed view caused by a hillcrest, abruptly and without signaling enters the right-hand lane of an interstate from the shoulder with conscious disregard for others (as Mr. Oumer did[4]), cannot be liable for wantonness as a matter of law.  *Cf. Clark v. Black*, 630 So. 2d 1012, 1016 (Ala. 1993) ("Kalar's testimony, if believed by the jury, would provide clear and convincing evidence that Black, <u>who was familiar with the intersection</u>, and, consequently, the dangers posed to traffic travelling south on Watermelon Road by the 'hillcrest' in that road, ignored the stop

---

[4] Taking all the facts and reasonable inferences in a light most favorable to Mr. Williams.

13

sign, <u>or, otherwise wantonly entered the intersection</u>." (emphasis added) (citing *Coca-Cola Bottling Co. United, Inc. v. Stripling*, 622 So. 2d 882 (Ala.1993))).

"In other words, viewing the evidence in the light most favorable to [Mr. Williams], [the court] conclude[s] that there is substantial evidence from which the jury could find that [Mr. Oumer] acted with a reckless or conscious disregard of the rights or safety of others by consciously" abruptly pulling into the right-hand lane of the interstate at an unsafe speed in the vicinity of a hillcrest and without properly using any flashers or turn signals before proceeding to enter such lane "and knowing" under such circumstances that, "injury would likely or probably result." *Scott*, 723 So. 2d at 644; *see also Scharff v. Wyeth*, No. 2:10–CV–220–WKW [WO], 2011 WL 4361634, at *15 (M.D. Ala. Sept. 19, 2011) ("The defendant's knowledge [pertaining to wantonness] 'may be proved by showing circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence.'" (quoting *Hamme v. CSX Transp., Inc.*, 621 So. 2d 281, 283 (Ala.1993))); *cf. Daniel v. Motes*, 153 So. 727, 728 (Ala. 1934) (determining under scintilla of evidence rule that "[t]hough he may not intend a collision, if he knowingly and wrongfully brings on a condition of danger, taking a chance on the other fellow giving way to his wrongful course, until too late for preventive effort, such conduct has all the elements of a wanton act").

14

## V.    CONCLUSION

Accordingly, for the foregoing reasons, Defendants' Partial Motion is

**DENIED**.

    **DONE** and **ORDERED** this the 17th of December, 2013.

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge

15